Barbara S. Kirkland v. Commissioner. Betty Stoddard Horn v. Commissioner.
Kirkland v. Commissioner
Docket Nos. 103022, 103035.
United States Tax Court
1942 Tax Ct. Memo LEXIS 86; 1 T.C.M. (CCH) 99; T.C.M. (RIA) 42599; November 19, 1942
*86 George E. H. Goodner, Esq., Munsey Bldg., Washington, D.C., and Scott P. Cramnton, Esq., for the petitioners. W. Frank Gibbs, Esq., and R. D. Duncan, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, J.: These proceedings were consolidated for hearing and involve deficiencies of $16,303.30 and $20,673.69 in income taxes for the calendar year 1936 for Barbara S. Kirkland and Betty Stoddard Horn, respectively. For the purpose of differentiation where needed petitioners will be referred to by surname only. At the hearing and on brief counsel for respondent conceded several minor issues. This leaves only two issues for our decision. The first is whether or not petitioners were carrying on a trade or business which would permit them to deduct office expense as an ordinary and necessary expense of that business. The second issue is whether or not each petitioner is entitled to deduct as a bad debt or as a loss the sum of $43,333.33 which each paid for her interest in a second mortgage note. Findings of Fact Petitioners are individuals having their principal office at 1 East 57th Street, New York, New York. They filed their income tax returns for the calendar *87 year 1936 with the collector of internal revenue for the third district of New York. They kept their books and filed their returns on the cash receipts and disbursements basis. Petitioners are the daughters of Louis E. Stoddard, Sr., and sisters of Louis E. Stoddard, Jr. Petitioners and their brother inherited a large estate from their maternal grandmother in 1918. Each owned an undivided one-third interest in this estate which consisted of real property located principally in Pittsburgh and Chicago, stocks, bonds, mortgages, jewelry and cash. While the children were minors, Stoddard, Sr. was guardian and managed the estate. All had reached their majority prior to the year 1936 and during that year they managed and controlled the estate themselves. During the year 1936 an office was maintained at the above named address from which the entire estate was managed. A managing secretary and an assistant were employed and agents were used for ministerial duties in both Chicago and Pittsburgh. The petitioners were housewives but came into the office upon the call of the managing secretary when there was a question of policy which they and their brother were called upon to decide. Although *88 they did not maintain any regular office hours they dropped in at irregular intervals for the purpose of signing checks and keeping in touch with the affairs of the estate. The managing secretary took care of the income, supervised the real estate, paid taxes, saw that rents were collected and expenses paid and in a general way looked after the property. In addition to the transactions in relation to real estate and real estate loans each of the petitioners had separate substantial investments in stocks and bonds. In order to protect such investments it was necessary to keep a constant check on them and to buy and sell at times in the open market. The secretary supervised these investments and operations. Capital gains and losses were realized in such transactions, which together with the dividends and interest received on the securities were entered in the books in the segregated individual accounts and the moneys were deposited in the bank to the credit of the persons entitled thereto. Office expenses were allocated to and paid by petitioner Kirkland in the amount of $2,572.26 and by petitioner Horn in the amount of $2,978.82. In 1925 each petitioner obtained for the sum of $43,333.33 *89 an undivided 13/45ths interest in a $350,000 seven percent second mortgage note of the Taft Realty Company. The note was secured by a second mortgage on all of the real estate owned by the Taft Realty Company. That real estate consisted of the Hotel Taft, the Taft Hotel Annex Apartments, and Shubert Theatre, all located in the City of New Haven, Connecticut. The Taft Realty Company was also obligated on first mortgage bonds which were secured by the same property. The payment of this first mortgage had been guaranteed by Stoddard, Sr. In 1933 the Taft Realty Company defaulted on the interest due on its first mortgage bonds and it had previously defaulted on the interest due upon its second mortgage note. In 1935 the trustees for the first mortgage bondholders instituted foreclosure proceedings. At that time the first mortgage bonds outstanding in the sum of $1,400,000 had been reduced to $1,175,900. Stoddard, Sr., in the hope of effectuating avoidance of liability upon his guaranty, induced the Taft Realty Company to file a petition for its reorganization under the provisions of section 77B of the Bankruptcy Act. On June 5, 1936, the Federal District Court accepted and approved *90 an "Amended Plan of Reorganization". This plan of reorganization was subsequently carried out. Under its terms a new corporation was organized, named the Taft Realty Corporation, which took over all the assets of the Taft Realty Company. For each $100 in bonds owned by them, the bondholders of the old company received from the new company a first mortgage three percent bond of the same face value and a voting trust certificate representing one share of common stock. Thereafter, the first mortgage bondholders owned 5/12ths of the total stock issued by the new company. The first mortgage securing the new bonds covered all the assets of the new company. As part of the plan Stoddard, Sr., undertook to sell the remaining 7/12ths of the new company's stock for $150,000. He was unable to buy any of this stock and he disposed of it by selling $42,500 worth to Stoddard, Jr., $42,500 to Mrs. Kirkland, $25,000 to Mrs. Horn and $40,000 to a friend. Upon securing the $150,000, Stoddard, Sr., was relieved of his guarantee under the first mortgage of the old company. The holders of the promissory note secured by the second mortgage of the old company received $150,000 of a four percent second *91 mortgage bond issue of the new company in the total principal amount of $155,000. The remaining $5,000 of such issue went to a New Haven bank for a $19,000 unsecured indebtedness of the old company. These new bonds were secured by a second mortgage on the same property which secured the first mortgage bonds. Interest was to be paid on the second mortgage bonds only if earned and there was no provision made for a sinking fund. The stockholders in the old company received no interest in the new company. The property of the new company consisted of Hotel Taft, the Taft Hotel Annex Apartments and the Shubert Theatre, which were in only fair condition. The Shubert Theatre was suitable only for legitimate plays and not for motion pictures. The entire equipment of the property was carried on the books at about $155,000. The property had earned only an average of $33,500 (without regard to depreciation) during the four years prior to 1936. During 1936 the secretary for the petitioners determined that their interests in the note were worthless and on September 15, 1936, she charged them off their books. Such action was approved by the petitioners. Upon the receipt of the new second mortgage *92 bond issue the secretary entered the items on the books at no cost. In computing the taxable income for 1936 each of the petitioners deducted the sum of $43,333.33 as a bad debt. Respondent has disallowed the deductions either as bad debts or losses. Opinion The first issue is whether or not petitioners are entitled to deduct the amounts paid by them as office expenses. They contend that they were engaged in a trade or business and should be allowed the deductions as ordinary and necessary business expenses. Respondent, on the other hand, contends that they were not engaged in a trade or business and that the expense is a personal item which is not deductible. In view of the provisions of section 121 (a) and section 121 (e) [1] of the Revenue Act of 1942, enacted subsequent to the hearing and submission of briefs herein, we find it unnecessary to determine whether the operations set forth in our findings of fact constituted a trade or business. Section 121, supra, amended section 23 (a) of the Revenue Act of 1936, in so far as applicable here, as follows: (a) Deductions for Expenses. - Section 23 (a) relating to deduction for expenses is amended to read as follows: "(a) Expenses. *93 - (1) Trade or Business Expenses. - (A) In General. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * * * *
(2) Non-trade or business expenses. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income. It is obvious that all of the operations here in question were engaged in for profit. It is also obvious that the expense in question were "ordinary and necessary expenses paid or incurred during the taxable year" for the purposes set forth in subparagraph (2) above and are accordingly deductible under section 23 (a) supra, as amended. It is, therefore, unnecessary *94 for us to determine whether such expenses were also ordinary and necessary expenses paid or incurred in carrying on a trade or business. The question and facts as to the second issue are substantially the same as in Louis E. Stoddard, Jr., 47 B.T.A. 584. In that case the Board held that the taxpayer, who is also the brother of the petitioners in this case, was not entitled to take a bad debt deduction or a deduction for a loss upon a like interest in the second mortgage note of the Taft Realty Company. We think the question presented in that case was correctly decided and accordingly we hold, upon the same factual situation, that neither petitioner is entitled to a deduction of $43,333.33 as a bad debt or as a loss. There were several other issues raised in the petitions which at the hearing and on brief respondent conceded. In the decisions under Rule 50 effect will be given to those concessions. Petitioner Kirkland is entitled to deduct a loss of $3,000 on account of her investment in stock of the Wide West Mining & Milling Company becoming worthless in 1936. She reported the correct amount of interest received on bonds of the Consolidated Oil Corporation *95 and accordingly the Commissioner erred in adding additional interest received in the amount of $18.47. Petitioner Horn reported the correct amount of dividends received by her during 1936 from the Eastman Kodak Company and thus the Commissioner erred in adding $75 as unreported dividends received from that company. She also reported the correct amount of interest received on the bonds of Monongahela West Penn Public Service Company and accordingly the Commissioner erred in adding additional interest received in the amount of $340. Decisions will be entered under Rule 50. Footnotes
1. SEC. 121. NON-TRADE OF NON-BUSINESS DEDUCTIONS * * * * *
(e) Retroactive Amendment to Prior Revenue Acts. - For the purposes of the Revenue Act of 1938 or any prior revenue Act the amendments made to the Internal Revenue Code by this section shall be effective as if they were a part of such revenue Act on the date of its enactment.↩